## LEE v. CALDWELL.

### No. 1881.

Court of Civil Appeals of Texas. Eastland.

Feb. 17, 1939.

620

Turner, Seaberry & Springer, of Eastland, for appellant.

L. H. Welch, of Breckenridge, for appellee.

LESLIE, Chief Justice.

This is an appeal from an order overruling a plea of privilege. Raymond Caldwell, appellee, instituted a suit in Shackelford County against appellant, T. W. Lee, to recover damages alleged to be the result of injuries sustained by him in an attempt to ride a vicious horse negligently furnished him by Lee for use in rounding up stock on the latter's ranch. Lee filed plea of privilege to be sued in Gregg County, and Caldwell filed his controverting affidavit seeking to hold the venue in Shackelford County upon the trespass theory provided for in sec. 9 of Art. 1995, R.S.1925. The petition is specifically made a part of the controverting affidavit.

Said Lee is the owner of the Seven Triangle Ranch in Shackelford County, and on May 7, 1937, the date of the alleged injury, he employed several ranch hands, including his foreman, to round up cattle on horse back. Caldwell was one of these ranch hands and in his suit he alleges that it was the duty of the appellant Lee to furnish him safe appliances or instrumentalities with which to work; that on said date the foreman employed him to assist in the round up and "ordered, directed and instructed" him to ride the horse named "KC" which he, Caldwell, thought was reasonably safe; that the appellant, through his foreman, disregarding his duty to furnish a safe horse, furnished him instead an outlaw horse; that he was vicious and dangerous to ride; that such propensities were either known to the appellant or could have been known in the exercise of ordinary care; that while riding said horse in the discharge of his duties he was seriously injured by the horse running, bucking and jumping, and that said injury was the proximate result of appellant's negligence "as hereinabove alleged"; that such alleged acts constituted an affirmative act of negligence on the part of the appellant. The appellant challenges the correctness of the judgment on the ground, among others, that the appellee failed to allege or prove facts constituting negligence and a trespass committed by appellant in Shackelford County, Texas.

The statement of facts discloses that Caldwell testified that he was by long experience familiar with ranch work and the riding of horses, broncos and "trained bucking horses"; that as an expert rider he had participated in rodeos at Albany, Breckenridge, Stamford, Fort Worth, Merkel, Seymour, Sweetwater, in New Mexico and Oklahoma.

"Q. What kind of horses did you ride at those rodeos? A. Just trained bucking horses.

"Q. Those are the worst bucking horses there are? A. They are trained for it; they are all right.

"Q. They are harder to ride than regular ranch horses? A. Yes sir.

\* \* \* \* \* \*

"Q. You are an expert at it? A. I wouldn't toot my horn much, but I can ride a pretty good horse.

\* \* \* \* \* \*

"Q. Did you ever see a horse you were afraid of? A. I didn't then. I am now; I am afraid of them now."

He testified that in these rodeos he rarely failed to get a prize and often got the first prize; that he participated in one a few days before his injury; that prior to this accident he had seen KC in a rodeo; that he saw one Ray Mobley ride him before the accident; that he saw Jim Bo Reynolds ride him a few days before the accident; that the horse always pitched and ran.

On the day of the accident the appellee showed up with his own saddle and special bridle, a bolero type or a "chingadadas" made for holding and managing horses disposed to run away.

"Q. One of the reasons you had that on him, you knew he was likely to run? A. Yes sir.

"Q. You thought he would like to buck? A. I wasn't worrying about it.

"Q. You weren't afraid of him? A. No."

Before bridling and saddling the horse on the day of the accident appellee and appellant's foreman had a conversation, in part, as follows:

"Q. What was it that Johnny said to you when you set out to the lot that morning? A. If I remember correctly, he said it was someone's time to ride KC, and asked me if I would ride him. I don't think there was any conversation, especially, only asking me if I would ride him.

"Q. What did you tell him? A. I said, 'Johnny, I had rather not ride him. I can't make a hand on him, but I will.' He said the other horses were ridden down, he wanted me to ride him, in the corral a little; he thought maybe I could ride him with this chingadadas that I had.

"Q. You told him you thought that would handle him? A. I told him I would see if it would.

"Q. You thought it would? A. Yes sir."

The appellee's testimony further shows that he mounted KC in the corral and there rode him for sometime while the other boys kept him from under the shed; that he then told them to open the gate so he could pass out of the corral; that the horse ran away with him twice that day before the accident but that he was not thrown; that after leaving the corral he and the other cowboys rode about six miles into the pasture where they separated for the purpose of rounding up the stock; that immediately thereafter the horse ran and bucked with him; that he dismounted and tied the horse to a tree; that about that time Johnny Mobley, appellant's foreman, came up and they had a conversation as follows:

"Q. Tell the court what you said and what he said. A. I pulled up my chaps— I was lying down in the shade, trying to keep out of the sun, to keep from blistering—I don't know just how come—I don't remember whether he said 'Are you having any trouble?' but something was said. We sat there and talked a little. I said I believed I would just stay there; he had been running. I wasn't going to be able to help them any, and I would just stay there until they got ready to go in.

"Q. What did Johnny say? A. He said 'I don't blame you a bit in the world.'

\* \* \* \* \* \*

"Q. What was that Johnny said to you, when you told him you weren't going to ride him any more? A. He said he didn't blame me. He said he wouldn't ride him. He said, 'I hated to ask you to ride him.' He said I don't blame you for not riding him.' "

The appellee further testified that he remained off of the bucking horse, for about an hour after that conversation, and then mounted him again after Johnny, the foreman, and the other boys had gone away rounding up the cattle; that within about five minutes after mounting him, he was injured by the horse jumping and running into brush; that he dismounted in the following manner: "As he went down the side of the fence, I threw the reins over a fence post, stopped him, got off of him, led him back to hunt my hat, and the other boys came up." Thereupon, at appellee's request the other boys procured a truck and carried him to a doctor and also led the horse to headquarters.

Jack Lawrence, a witness for appellee, testified that he was familiar with ranch work and the riding of horses; that he had ridden this horse a few times; that some three, four or five days before the accident he had ridden this horse to the ranch and left him there.

There was no testimony that appellant Lee had any actual and personal knowledge of the vicious propensities of this horse or that he knew the horse was on the ranch. The horse had been there but a few days, and the foreman Mobley had not ridden him, though he had seen the witness Lawrence ride him.

 Under the rules of law applicable to the facts of this case, the appellee, Caldwell, had the burden of proving his venue facts, viz., affirmative or active negligence on the part of the appellant amounting to a trespass (Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91) as that term is judicially interpreted. The proof of the fact of the commission of the trespass is as essential as the proof of the place where it was committed. Waco Cotton Oil Mill v. Walker, Tex.Civ.App., 103 S.W.2d 1071.

After a careful consideration of the testimony, the essential features of which are above set out, we are of the opinion that any proper interpretation of it compels the conclusion that there was a complete failure on the part of the appellee to show that the foreman Mobley knew and that he, Caldwell, did not know that said horse was a vicious, outlaw horse, and it is equally certain that the testimony fails to show that the foreman ordered or required the appellee to ride this horse on the occasion of the accident.

 As held by this court in Metzger Dairies v. Wharton, 113 S.W.2d 675, the question of venue is not to be controlled by the form of averments as showing active or passive negligence. If so, the venue in a negligence case could perhaps always be predetermined by the mere matter of form of pleading. Giving controlling effect to the evidence, we think it establishes

**622**

conclusively that the only allegations of negligence supported by the evidence consists in a failure or omission on the part of Lee or Mobley, his foreman, to do that which it was his duty to do rather than the doing of that which it was their duty not to do. There is presented a case, if any, of passive negligence, as contradistinguished from active negligence. Such being the case, a trespass within the meaning of exception 9 is not shown.

Further, we believe that the opinion of our Supreme Court in Meredith v. McClendon, 130 Tex. 527, 111 S.W.2d 1062, rules this case. It was there held that the act of employing a person and putting him to work in operating a machine not protected by guards, with a knowledge of employee's inexperience, is not such an affirmative act of negligence as will constitute "trespass" within the statute authorizing maintenance of suit against the defendant not domiciled in the county in which the alleged trespass was committed.

We have had occasion to interpret and apply this opinion in the case of Metzger Dairies v. Wharton, supra, and we think it equally applicable to the facts of this case.

Taking the testimony in its fullest significance, and in the light of the above authorities, there would seem to be other grounds for the judgment here pronounced, but we find it unnecessary to discuss them.

For the reasons assigned, the judgment of the trial court is reversed and the venue of the cause is removed to the District Court of Gregg County, Texas. It is so ordered.